IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL M. ST. JOHN, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 11-2359 |
| v. | : | |
| PATRICK R. DONOHUE, | : | |
| POSTMASTER GENERAL, | : | |
| Defendant. | : | |
| | : | |

DuBois, J.                                                                                                       April 19, 2013

# M E M O R A N D U M

## I.      INTRODUCTION

In this case, plaintiff Paul M. St. John alleges that his employer, the United States Postal Service ("USPS"), retaliated against him for filing Equal Employment Opportunity ("EEO") complaints, in violation of Title VII of the Civil Rights Act of 1964. Presently before the Court is Defendant's Motion for Summary Judgment. For the reasons that follow, the motion is granted in part and denied in part.

## II.     BACKGROUND[1]

St. John has been employed by the USPS as a Letter Carrier at the Elkins Park, Pennsylvania Post Office ("Elkins Park") since May 3, 2003. (Statement of Undisputed Facts ("SOUF") ¶ 1, 3.) Between 2004 and 2010, St. John filed seven formal and informal EEO complaints for national origin discrimination and retaliation by his supervisors with the EEO Office of the USPS. (SOUF ¶ 4.) The two most recent complaints were filed on July 13, 2009 and April 17, 2010. (Id.) St. John also commenced a federal lawsuit against the USPS in 2009, claiming national origin discrimination and retaliation for his previous EEO activity. See St.

---

[1] The facts are presented in the light most favorable to St. John, the non-moving party.

John v. Potter, 2011 WL 780685 (E.D. Pa. Mar. 4, 2011). The court ultimately granted the defendant's motion for summary judgment on May 4, 2011. Id.

The instant case arises out of events that occurred between January 2010 and August 2010.

    A.    St. John's Applications for Eleven Supervisor Positions

In January 2010, St. John applied for eleven USPS supervisor positions at several post offices in Philadelphia and the surrounding Philadelphia suburbs. (SOUF ¶ 7.) None of St. John's applications were for positions at Elkins Park, where he had worked as a letter carrier since 2003. (SOUF ¶ 9.) Four of these eleven supervisor vacancies were ultimately canceled, and no one was hired to fill those positions. (SOUF ¶ 11.) St. John was "Not Recommended" for five of the positions for which he applied. (SOUF ¶ 12.) St. John received interviews for the remaining two vacancies, which were USPS Customer Service Supervisor positions at the Doylestown and North Philadelphia Post Offices. (St. John Dep. at 18.) The Doylestown Postmaster conducted the Doylestown interview and Janet Felix, the North Philadelphia Station Manager, conducted the North Philadelphia interview. (Id.) St. John had never met either interviewer prior to these two interviews, and his previous EEO activity was not discussed during either interview. (Id. at 19, 24). During the North Philadelphia interview, Janet Felix told St. John that he should obtain additional experience. (St. John Dep. at 57.) In April 2010, plaintiff was informed that he was not selected for either supervisor position. (Id. at 20).

Demetrius Casillas was the Customer Service Supervisor at Elkins Park and directly supervised St. John until June 2010. (Casillas Decl. ¶ 2; St. John Dep. at 10.) On April 8, 2010, Casillas called St. John into his office and explained that he was not hired for any of the

2

supervisor positions because of his EEO activity and the fact that Mr. Gallagher, the USPS Philadelphia district manager, "knew who I [St. John] was." (St. John Dep. at 12, 21.)

One week later, Casillas again explained to St. John that the reason he did not get the supervisor position was because of the EEO complaints he had filed. (Id. at 26-28.) At his deposition, in response to the question "Did you ever tell Mr. St. John that his EEO activity would be a problem for him in his quest to become a supervisor," Casillas responded:

> Not that it would be a problem, but . . . you know, I always try to give Mr. St. John advice . . . . And I tell him, I say, listen, you want to move up in any corporation, you got to play the game, whatever, you know. And in this case, you go with the flow. All right? Now, knowing his background, and we've talked, you know, certain things you just don't do. All right? You don't make a lot of noise and expect people you know, to tend to you. It's not like being a kid. You know, a kid is hungry. All right? But here when we're all adults, you have to conform to the rules and regulations of your employer. (Casillas Dep. at 10-11.)

St. John contends that it is common practice for management officials to contact an applicant's current post office to gather information about the applicant after an application is submitted. (St. John Dep. at 28-29.) Daniel Dugan, who was and still is the Postmaster at Elkins Park, also supervised St. John at Elkins Park. (Dugan Decl. ¶ 2.) Dugan asserts that he was not contacted by anyone from the Doylestown or Philadelphia Post Offices concerning St. John's applications for the supervisory positions. (Id. ¶ 7.) Further, both Dugan and Casillas assert that they were not involved in the selection process for any of the eleven positions St. John applied for in 2010. (Dugan Decl. ¶ 5-7; Casillas Decl. ¶ 8.)

B.      Overtime Annotations

St. John continued to work at Elkins Park after he was denied the Doylestown and North

3

Philadelphia supervisor positions. St. John worked 17.13 hours of overtime from April 5 to April 28, 2010, and 1.73 hours of overtime on May 5, 2010. (SOUF ¶ 34.) Overtime hours worked by letter carriers employed by the USPS are recorded on the Overtime Desired List ("ODL"), which is accessible to St. John and his co-workers. (St. John Dep. at 38-41.) The ODL references the overtime hours that letter carriers work on other carrier's routes, but it does not outline overtime worked on a letter carrier's own route. (Dugan Decl. ¶ 9.) The Collective Bargaining Agreement ("CBA") between the USPS and the letter carriers union requires that all opportunities for overtime from the ODL be equalized between all employed letter carriers at each post office at the end of every fiscal quarter. (SOUF ¶ 27-28.)

St. John alleges that he was improperly denied five or six total hours of overtime on certain days in April 2010 and May 2010, which fall in the third fiscal quarter of 2010. (St. John Dep. at 52, 67, 70.) He testified that Dugan did not want him to receive any overtime because he previously filed an EEO complaint against Dugan. (Id. at 70.) On this issue, Casillas, who was in charge of apportioning ODL overtime for all Elkins Park letter carriers, asserts that he authorized ODL overtime in April 2010 and May 2010 so that all letter carriers were given equal overtime opportunities by the end of the fiscal quarter. (Casillas Decl. ¶ 12.) St. John does not dispute that his total opportunity for ODL overtime for the third fiscal quarter of 2010 was equal to that of the other Elkins Park letter carriers at the end of the quarter.

In April 2010, Dugan annotated the ODL to show the amount of overtime St. John had worked on his own route. (Compl. ¶ 24.) These types of annotations had not been made with respect to other letter carriers' names in the past. (St. John Dep. at 8-18.) According to St. John, his co-workers began to "grumble" about the perceived increased overtime that St. John was

4

receiving, and this "created aggravation for [St. John] with respect to his fellow carriers." (Id. at 38-41) St. John subsequently filed a grievance regarding the annotations with his union in April 2010. (Id. at 39.) In response, Dugan agreed to stop annotating the ODL. (Id.) Plaintiff's overtime hours and compliance under the CBA rules were not affected by Dugan's annotations. (Id.)

        C.      <u>204-B Temporary Acting Supervisor Position</u>

In a letter dated March 11, 2010, St. John informed Dugan that he was interested in being considered for any future temporary acting supervisor 204-B vacancies at Elkins Park because it would provide him with the additional experience he was told he needed during the North Philadelphia supervisor interview. (Resp. Ex. 1.) Dugan responded to the letter by informing St. John that he would pursue 204-B positions for St. John at other post offices and keep him informed. (St. John Dep. at 79-80.)

There is no formal application or selection process for a 204-B position and no announcement was made regarding the 204-B vacancy at Elkins Park in August 2010. (Dugan Affidavit ¶ 19.) St. John contends that Dugan failed to post the 204-B position in order to prevent St. John from becoming aware of the opening. (Resp. at 15.)

Casillas was no longer working at Elkins Park when Dugan ultimately filled the 204-B position, having left for another job in June 2010. (Casillas Decl. ¶ 2.) Dugan hired Patricia Wong as the 204-B for Elkins Park in August 2010. (Dugan Affidavit ¶ 20-21.) At the time of hiring, Wong was classified as a Transitional Employee. (Dugan Affidavit ¶ 21-22.) As a Transitional Employee, Wong was not eligible for the same benefits, overtime pay, or salary increases permanent employees like St. John would be eligible to receive in the 204-B position.

5

(Dugan Affidavit ¶ 22.) Wong also had prior experience in a 204-B position in New Jersey. (Id.) Dugan testified at his deposition that he believed Wong was the best candidate and chose to hire Wong over St. John for the 204-B position because St. John lacked supervisory experience, had previous problems with co-workers which would affect office morale if he was given the 204-B position, and would cost more than Wong to employ in the 204-B position. (Dugan Affidavit ¶ 23; Dugan Declaration ¶ 7.)

St. John commenced this action against the USPS, alleging that USPS supervisors unlawfully retaliated against him for engaging in protected EEO conduct. Presently before the Court is Defendant's Motion for Summary Judgment with respect to plaintiff's retaliation claims.

## III. LEGAL STANDARD

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant a motion for summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

IV.   DISCUSSION

St. John asserts a claim for retaliation against the USPS under Title VII, 42 U.S.C. § 2000e-16.  Title VII forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a).  The separate anti-retaliation provision of Title VII "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006) (quoting § 2000e–3(a)).

The framework for evaluating summary judgment motions under Title VII was established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Retaliation claims are also analyzed under the McDonnell Douglas burden shifting framework.  See Gilbert v. Phila. Media Holdings LLC, 564 F.Supp.2d 429, 439 (E.D. Pa. 2008). "To establish a prima facie retaliation claim under Title VII, the plaintiff must demonstrate that (1) he engaged in protected activity; (2) after or contemporaneous with that protected activity, he was subject to a materially adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action."  Lebofsky v. City of Phila., 394 Fed. App'x. 935, 938 (3d Cir. 2010) (footnote omitted) (citing Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007)).

7

If the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to offer some legitimate, non-discriminatory reason for the adverse employment action. See Marra, 497 F.3d at 300–01 (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 n. 2 (3d Cir. 1997)). The defendant "need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 762 (3d. Cir. 1994); accord Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981).

If the employer is able to satisfy this "relatively light burden," the burden of production then shifts back to the plaintiff, who must show, by a preponderance of the evidence, that the employer's explanation is pretextual. Fuentes, 32 F.3d at 762. The plaintiff must show that "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Moore v. City of Phila., 461 F.3d 331, 342 (3d. Cir. 2006) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500–01 (3d Cir. 1997)).

St. John alleges that he was retaliated against for previously filed EEO complaints on three occasions: (A) when he was not hired for any of the eleven permanent supervisor positions he applied for in January 2010, (B) when his supervisors denied him overtime hours and annotated the ODL at Elkins Park in April and May 2010, and (C) when he was not informed of a temporary supervisor vacancy at Elkins Park and a different employee was hired for that position in August 2010.

### A. First Claim of Retaliation: Plaintiff Not Selected for Supervisor Positions

St. John alleges that he was not selected for any of the eleven supervisor positions he applied for because of his previously filed EEO complaints. He relies upon the two alleged

8

conversations that he had with Casillas in April 2010, where Casillas informed St. John that he was not hired for the Customer Service Supervisor positions at the North Philadelphia and Doylestown Post Offices because of his EEO activity and because Gallagher "knew who I [St. John] was." Additionally, St. John points to statements made by Casillas at his deposition to support this retaliation claim.

    (a)  Prima Facie Case

Defendant only disputes that the second and third prongs of the prima facie case are not satisfied. The Court will consider each in turn.

    1.    Materially Adverse Employment Action

An adverse employment action includes "'a significant change in employment status, such as…failing to promote….'" Pagan v. Gonzalez, 430 Fed. App'x. 170, 172 (3d Cir. 2011) (quoting Durham Life Ins. Co. v. Evans, 166 F.3d 139, 152–53 (3d Cir. 1999)). In the retaliation context, the definition of an adverse employment action is even broader because it "is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington, 548 U.S. at 64. In this case, St. John was not hired for any of the permanent supervisor positions he applied for in January 2010, including the two Customer Service Supervisor positions he interviewed for. A failure to promote St. John to a permanent supervisor position qualifies as an adverse employment action in this case because the failure to promote "well might have dissuaded [St. John] from making or supporting a charge of discrimination." Burlington, 548 U.S. at 68; accord Moore, 461 F.3d at 341. Therefore, St. John has established that he was subject to a materially adverse employment action.

##### 2. Causation

As to the third prong of the prima facie case, defendant asserts that there is no causal connection between St. John's EEO activity and his failure to be hired for any of the Customer Service Supervisor positions. Defendant argues that Casillas was not personally involved in the hiring process for the eleven supervisor positions and that there is no evidence that a decisionmaker in charge of hiring for any of these supervisor positions knew of plaintiff's EEO activity. The Court rejects defendant's argument because, viewing the record in the light most favorable to plaintiff, a genuine dispute as to a material fact exists as to the causal connection between St. John's EEO activity and his failure to obtain a supervisor position.

To establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse, 126 F.3d at 503-04; Woodson, 109 F.3d at 920-21. In the absence of that proof, the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

St. John has provided evidence that he was not hired for any of the supervisor positions because of his EEO activity and because Mr. Gallagher, the district manager for the Philadelphia area at the time, "knew who I [St. John] was." From that statement, a trier of fact could reasonably infer that St. John was not hired because of Gallagher's knowledge of St. John's EEO activity. Additionally, when asked about St. John's EEO activity, Casillas stated that he advised St. John that "[if] you want to move up in any corporation, you got to play the game," "certain things you just don't do," "[y]ou don't

make a lot of noise and expect people…to tend to you," and "you have to conform to the rules and regulations of your employer." (Casillas Dep. at 10-11.) A trier of fact could reasonably infer that Casillas' statements reflect what Casillas heard from Gallagher or other decisionmakers about St. John's quest to become a supervisor. The suggestion that St. John's EEO activity had affected his applications for permanent supervisor positions satisfies St. John's burden of showing a causal connection based on the evidence in the record as a whole.[2]

(b) Defendant's Legitimate, Non-Discriminatory Reason

The burden of production shifts to defendant to offer some legitimate, non-discriminatory reason for the adverse employment action against St. John. See Marra, 497 F.3d at 300–01 (citing Woodson, 109 F.3d at 920 n. 2). Defendant contends that St. John did not have the requisite experience for the positions he applied for. To support this contention, defendant relies on the fact that St. John was told at the North Philadelphia interview that he should obtain additional experience. Since the USPS "need not prove that the tendered reason *actually* motivated its behavior," the USPS has satisfied its burden at this stage. Fuentes, 32 F.3d at 762.

---

[2] Defendant argues that any statement Casillas made to St. John is hearsay and/or hearsay within hearsay because the source of his information is not identified, and these conversations and alleged statements therefore cannot be relied upon at the summary judgment stage. (Reply at 3.) The Court rejects this argument. "[T]he Third Circuit has held that hearsay evidence may be considered at the summary judgment stage if the 'declarant could later present the evidence through direct testimony, i.e., in a form that would be admissible at trial.'" Rossi v. Schlarbaum, 600 F.Supp.2d 650, 665 (E.D. Pa. 2009) (quoting J.F. Feeser, Inc. v. ServA-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990). In this case, St. John could produce as witnesses Casillas and the source of the alleged statements made by Casillas.

(c) Pretext

To defeat defendant's motion for summary judgment, St. John must show that defendant's explanation is pretextual. Id. St. John once again relies on the alleged conversations between St. John and Casillas and Casillas' statements at his deposition to show that St. John's EEO activity and Gallagher's knowledge of St. John were the real reasons St. John was not hired for any of the supervisor positions. For the same reasons Casillas' statements support an inference of causation, they also support pretext. At the summary judgment stage, these conversations and deposition testimony create a genuine dispute of a material fact as to whether defendant's proffered reason is pretextual.

(d) Conclusion With Regard to the First Claim of Retaliation

Defendant's Motion for Summary Judgment with respect to plaintiff's claim of retaliation based on the fact that he was not hired for the permanent supervisor positions he applied for is denied for all of the foregoing reasons.

B. Second Claim of Retaliation: Plaintiff Denied Overtime and the ODL Annotations

The second alleged occurrence of retaliation involves St. John's overtime in April and May 2010. St. John asserts that he was improperly denied five or six total hours of overtime because he previously complained about Dugan in an EEO complaint. St John further contends that Dugan improperly annotated the ODL to show the amount of overtime St. John had worked on his own route, resulting in "grumbl[ing]" and "aggravation" from his fellow letter carriers.

Defendant once again does not dispute that St. John engaged in protected conduct. Defendant, however, disputes the second prong of the prima facie case for retaliation – that St. John suffered an adverse employment action.

Failure to show harm, such as "resultant economic loss…or any change to the terms of [plaintiff's] employment," can be fatal to one's claim. Morrison v. Carpenter Tech. Corp., 193 Fed. App'x 148, 154 (3d Cir. 2006). "[P]etty slights, minor annoyances, and simple lack of good manners" will not normally constitute materially adverse employment actions, even if they follow protected conduct. Burlington, 548 U.S. at 68.

    (a)    Denial of Overtime

As to St. John's claim regarding the five or six overtime hours he was allegedly improperly denied, St. John cannot satisfy his burden of establishing an adverse employment action because he did not suffer any resultant economic loss. The CBA requires that St. John's opportunity for overtime be equal to that of the other Elkins Park letter carriers at the end of each fiscal quarter. Casillas authorized ODL overtime so that all letter carriers were given equal overtime opportunities by the end of the fiscal quarter. St. John does not dispute that his total ODL overtime for the third fiscal quarter of 2010 was equal to that of the other Elkins Park letter carriers at the end of the quarter. St. John received the same opportunity for overtime as the other letter carriers at Elkins Park. Thus, St. John did not suffer an adverse employment action by being denied overtime hours on certain days in April and May 2010.

    (b)    ODL Annotations

As to St. John's claim regarding Dugan's annotations on the ODL, the Court also concludes that St. John has failed to satisfy his burden of establishing an adverse employment action. St. John claims that the annotations caused St. John's co-workers to "grumble" about the perceived increased overtime that St. John was receiving and caused "aggravation" between St. John and his co-workers. Yet, plaintiff's overtime hours were not affected by Dugan's

13

annotations. Further, once St. John filed a grievance with his union concerning the annotations in April 2010, Dugan stopped annotating the ODL. Construing this claim in the light most favorable to St. John, it merely amounts to "petty slights" or "minor annoyances" that do not constitute materially adverse employment actions. Burlington, 548 U.S. at 68.

        (c)       Conclusion With Regard to the Second Claim of Retaliation

Defendant's Motion for Summary Judgment with respect to plaintiff's claim of retaliation based on the denial of overtime and the ODL annotations is granted for all of the foregoing reasons.

     C.       Third Claim of Retaliation: Plaintiff Not Selected for 204-B Position

St. John's third claim of retaliation relates to the 204-B position at Elkins Park that was filled in August 2010. St. John asserts that he was retaliated against when he was not informed of the vacancy and when Dugan hired Wong for that position.

There is no dispute that St. John has satisfied the first two prongs of the prima facie case. Defendant, however, argues that St. John has not provided evidence to prove causation. Further, defendant argues that St. John has not rebutted the USPS' legitimate non-retaliatory reason for not selecting St. John to fill the 204-B position.

        (a)       Prima Facie Case – Causation

In regard to causation, St. John has failed to produce evidence to establish a causal connection between his previous EEO complaints and Dugan's decision to hire Wong for the 204-B position.

St. John cannot establish the requisite causal connection solely by temporal proximity. To establish the requisite causal connection by temporal proximity, a plaintiff

must prove an "unusually suggestive" temporal proximity between the protected activity and the allegedly retaliatory action. Kachmar v. Sungard Data Sys., 109 F.3d 173, 178 (3d Cir. 1997). St. John filed his previous federal lawsuit against the USPS on September 16, 2009. (Resp. Ex. 2.) (Id.) St. John's most recent EEO complaint was filed on April 17, 2010. Wong was hired in August 2010. Neither the approximately eleven months that had passed since St. John filed his previous federal lawsuit nor the approximately four months that had passed since St. John's last EEO complaint qualify as being "unusually suggestive" in temporal proximity to establish causation alone.[3] See Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 760 (3d Cir. 2004) (determining that a temporal proximity of two months does not qualify as being unusually suggestive of retaliation).

Further, St. John has not provided evidence of a pattern of antagonism on the part of the USPS and thus cannot establish causation in that manner. Dugan's previous annotations of the ODL do not show the necessary level of antagonism. Further, there is no evidence that Dugan was involved in any of the hiring decisions for the eleven supervisory positions St. John applied for earlier in 2010.

Moreover, St. John has not established causation based on the record as a whole. See Farrell, 206 F.3d at 281. St. John cannot satisfy this burden because he has provided no evidence

---

[3] St. John argues that temporal proximity is established because St. John's previous lawsuit against the USPS was still pending when Dugan hired Wong for the 204-B position. Even if the Court were to look at the filings in the previous lawsuit, his non-selection occurred approximately eight months after the most recent substantive filing, defendant's Answer, on December 21, 2009. The approximately eight months that passed between that filing and Wong's hiring also does not qualify as being "unusually suggestive" in temporal proximity to establish causation.

to suggest that Dugan did not post the 204-B vacancy or select St. John for the 204-B position because of his EEO activity. First, both Casillas' conversation with St. John in April 2010 in which Casillas is alleged to have referred to Gallagher and Casillas' deposition statements relate to the reasons St. John was not hired for the eleven permanent supervisor positions. These statements do not refer to Dugan or the reasons why Dugan selected Wong instead of St. John for the 204-B position in August 2010. Further, Casillas left Elkins Park in June 2010, two months before Dugan hired Wong for the 204-B position in August 2010. Lastly, there was no formal application or selection process for 204-B positions at the USPS, and thus Dugan did not deviate from a standard hiring practice when filling the 204-B vacancy at Elkins Park. See Cerol v. Temple Univ., 2007 WL 2345276, at *11 (E.D. Pa. 2007) (finding no evidence of pretext because "the promotion process was [not] marred by procedural oddities, inconsistent standards, or shifting explanations"). As a result, St. John has failed to prove causation with respect to the Elkins Park 204-B position.

Even assuming, arguendo, that St. John can satisfy his burden of establishing a prima facie case of retaliation in regard to the 204-B position, St. John has produced no evidence from which a fact finder could reasonably infer defendant's legitimate non-discriminatory reasons to be pretext for retaliation.

        (b)      <u>Defendant's Legitimate, Non-Discriminatory Reasons</u>

Defendant has offered three reasons for why Wong was hired for the 204-B position over St. John: (1) St. John lacked supervisory experience whereas Wong had previous supervisory experience at another post office; (2) St. John had previous problems with co-workers which would affect office morale if he was hired for the 204-B position at Elkins Park; and (3) it would

have cost the USPS more to employ St. John than Wong in the 204-B position. Thus, defendant has satisfied its burden of offering legitimate, non-discriminatory reasons for the adverse employment action. See Marra, 497 F.3d at 300–01.

  (c)  Pretext

 Plaintiff may defeat summary judgment by adducing direct or circumstantial evidence that casts "sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication," or by allowing the factfinder to infer that retaliation "was more likely than not a motivating or determinative cause of the adverse employment action." Barber v. CSX Distribution Servs., 68 F.3d 694, 701 (3d Cir. 1995) (citing Fuentes, 32 F.3d at 762). This requires the plaintiff to put forward "such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Fuentes, 32 F.3d at 765.

 St. John contends that defendant's arguments are pretextual because the sole additional responsibility of the 204-B employee at Elkins Park was to lock up the post office at the end of the day. Assuming, arguendo, that this is true, St. John nevertheless has not offered sufficient evidence to cast doubt on each of the legitimate reasons proffered by the USPS.

 Prior experience in a 204-B position was a relevant consideration in filling a 204-B vacancy at Elkins Park. Further, employee morale was a key consideration for Dugan whose responsibilities were to ensure the proper functioning of the post office. Most importantly, it was reasonable for Dugan to take into consideration the cost associated with hiring the two different individuals for the 204-B position at Elkins Park when significant budgetary pressure and

17

financial problems required the USPS to focus on ways to cut costs.

          (d)       <u>Conclusion With Regard to the Third Claim of Retaliation</u>

Even were the Court to have found that St. John established a prima facie case of retaliation, St. John has not pointed to inconsistencies or weaknesses in defendant's legitimate, non-discriminatory reasons for not hiring St. John to suggest that retaliation was more likely than not the cause of St. John's non-selection for the 204-B position. Accordingly, Defendant's Motion for Summary Judgment as to plaintiff's claim of retaliation in regard to the 204-B position is granted for all of the foregoing reasons.

## V. CONCLUSION

Defendant's Motion for Summary Judgment is granted in part and denied in part. The Motion for Summary Judgment is granted with respect to plaintiff's retaliation claims relating to overtime and the 204-B position at Elkins Park. The Motion for Summary Judgment is denied with respect to plaintiff's retaliation claim relating to the eleven permanent supervisor positions.

An appropriate order follows.